Filed 10/16/15  In re M.V. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re M.V., a Person Coming Under the Juvenile Court Law. | B260636 (Los Angeles County Super. Ct. No. CK87945) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. G.V., Defendant and Appellant. | |

APPEAL from the judgment and orders of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

Kate M. Chandler, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

Andrea R. St. Julian, under appointment by the Court of Appeal, for Respondent Anthony M.

G.V. (mother) appeals from the dependency court's November 7, 2014 jurisdictional and dispositional orders: (1) declaring her six-year-old daughter, M.V., a dependent under Welfare and Institutions Code section 300, subdivision (b) (failure to protect);[1] (2) removing minor from her custody under section 361, subdivision (c); (3) terminating jurisdiction with a family law exit order granting custody to Anthony M. (father) and monitored visitation to mother; and (4) requiring mother to complete a drug treatment program as a condition to modifying the family law exit order.[2]

We conclude that substantial evidence supports the court's jurisdictional findings and dispositional order removing minor from mother's custody. We further conclude the court acted within its discretion in awarding father custody of minor, requiring monitored visitation and drug treatment for mother. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother and father[3] were never married and lived separately. Prior to her detention, minor resided with mother who had primary custody and father had alternating weekend visits. Father has two other children from different mothers.

---

[1] All statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2] In a May 11, 2015 letter addressed to this court, the Los Angeles County Department of Children and Family Services (Department) stated it "takes no position as to mother's challenge to the [dependency] court's November 7, 2014, dispositional orders granting custody of the child to her father and requiring mother to attend a drug treatment program."

[3] Father is a non-offending parent and has filed a respondent's brief in this appeal. He joins the arguments made by the Department but also contends the court acted within its discretion in awarding him sole legal and physical custody, and requiring mother's visits be monitored based mother's failure to have engaged in certain services.

**Prior Referral History**

The family has a history with the Los Angeles County Department of Children and Family Services (Department) dating back to 2010. On July 1, 2010, a referral was received alleging that minor was a victim of physical abuse and emotional abuse by mother. The referral stated that mother and father were arguing at the visitation exchange location and mother threw a cup of water on father and slapped him while she was holding minor. During the Department's investigation, mother refused to meet with the social worker and the referral was closed as inconclusive.

On October 22, 2010, the Department received a referral alleging minor was a victim of sexual abuse and physical abuse by father, which was later closed as unfounded. On February 11, 2011, a referral was received alleging minor was a victim of sexual abuse by father and neglect by mother, which was also closed as unfounded.

On April 28, 2011, a referral was received alleging that minor was a victim of sexual abuse by father and emotional abuse by mother. During the Department's investigation, it was determined that minor "was coached and that mother was reinforcing the child's disclosures." The referral was substantiated as to mother and was determined to be unfounded as to father. Minor was then detained from mother, released to the care of father, and a family maintenance court case was opened.

On May 20, 2011, a referral was received alleging that minor was a victim of neglect by father. The referral stated father was observed outside his home smoking marijuana and drinking alcohol. Minor and her siblings were often left outside without adult supervision. This referral was closed as unfounded.

On November 22, 2011, the dependency court sustained a section 300 petition and found true mother and father were involved in a custody battle resulting in referrals to the Department, including allegations of sexual abuse that placed minor at risk of serious emotional damage. The court ordered minor to be released back to the home of mother and ordered that both parents receive family maintenance services. On May 13, 2013, the court terminated jurisdiction with a family law exit order granting the parents joint legal

3

and physical custody of minor.

On August 29, 2014, a referral was received alleging that minor was a victim of neglect by mother. The referral stated that mother and minor were in a car accident and mother failed to seek medical treatment for minor. Minor disclosed that she bumped her head during the accident and that her head still hurt. It was also reported that minor was exposed to incidents of domestic violence between mother and her boyfriend, whom she lived with along with boyfriend's mother. The referral was closed as inconclusive.

**Current Welfare and Institutions Code Section 300 Petition**

The Department filed a section 300 petition against mother for failure to protect under subdivision (b). In count b-1, the petition alleged minor was at risk of harm due to mother's mental and emotional problems, including paranoid behavior and visual hallucinations, rendering her unable to provide regular care for minor. On September 15, 2014, mother was involuntary hospitalized for an evaluation and treatment of her psychiatric condition. In count b-2, the petition alleged her history of drug abuse and current use of methamphetamine and marijuana rendered her incapable of providing regular care for minor and placed minor at risk of harm.

On September 15, 2014, the Department received a referral alleging mother emotionally abused minor and was absent or incapacitated. The Arcadia Police Department took minor into protective custody after mother was arrested at the mall. The reporting party said mother had walked into the mall security office with minor, claiming she was being followed by someone and that she was being followed by "people for the past four days." According to the police report, mother told responding police officers she wanted to be taken to a domestic violence shelter. However, mother would not provide the officers with any information, such as her identification, home address, telephone number, or a contact person. Mother stated she and minor were homeless and again requested to be transported to the nearest shelter. Mother's "demeanor grew more evasive and resistive as [the officers] continued to ask her questions." Mother was acting

4

paranoid and tried to discontinue the conversation by walking away. The police officers arrested mother under Penal Code section 148, subdivision (a)(1), for willfully resisting/delaying a peace officer, and for further investigation of her mindset to determine if she was a danger to herself or others.

Mother's boyfriend's mother, Christina S., was on her way to the police station with the intent of having minor released to her care. Christina reported that mother and minor were currently living with her. According to the police report, Christina said mother "often displayed irrational behavior and stated people were trying to kill her."

When the social worker arrived at the police station, the arresting officer informed him that mother had been placed on a psychiatric hold for 72 hours and transported to the hospital. During the booking process, mother had refused to cooperate and continued to display irrational behavior. Based on her behavior and apparent psychological issues, the officer determined mother needed to be examined by a doctor and transported her to the hospital for a 72-hour hold. The social worker contacted father, who stated that he would be coming to pick up his daughter immediately.

In an interview with the social worker, minor said she did not see anyone following them when mother made this report to mall security. She stated that mother was arrested when she failed to comply with the police officer's orders. Minor was able to provide the social worker with father's name and stated she spent four days with "father during the week and was returned to . . . mother on Sunday in order to attend school on Monday." Minor said she "would prefer to go home with . . . mother [more] than anyone else at this time." Minor did not like the idea of Christina taking her home without mother and she started to cry. She later calmed down when she learned father was coming to get her.

When father arrived at the police station, the social worker interviewed him. Father said he worked as a production designer for a movie company in Hollywood. He stated this was the second time minor has been taken away from mother, the first occurring after abuse by mother and mother's exploitation of minor. Father told the social worker that mother has physical custody of minor but she was not supposed to

5

move to another home or address without his consent pursuant to a prior court order. He recently learned that mother had moved and has been changing schools for minor, violating the court order. Father then found out minor had been missing a lot of school after the school called requesting minor's transfer papers. He also said mother has been a heavy drug user in the past and only cares about money she receives from child support and "cares less for the wellbeing [*sic*] of her daughter." Father said mother was living with her boyfriend and minor told him that she observed the boyfriend punching mother's chest. Mother has not provided father with the address where she currently lives with their daughter. Mother and minor were involved in a car accident and minor had bumped her head, but mother failed to seek medical attention. Upon learning about the accident weeks later, father took minor to urgent care where minor was medically cleared. Father then made another report to the Child Protective Services hotline. Father reported that a court order directs mother not to drink alcohol in minor's presence, however, minor told father that mother was drinking on two separate occasions. Father said he will be leaving for Columbia for a movie production and minor will be staying with paternal grandmother at his house. The Department released minor to father, where she remained throughout the pendency of the dependency proceedings.

After mother was discharged from the hospital, she checked into a hotel without her boyfriend because "she needed time alone." Mother agreed to meet with the social worker to address the allegations against her. Mother stated she walked into the security mall office because she felt someone was following her. She claimed that father had been sending her threatening emails and had a feeling it was father following her even though she did not see him in person. Mother said she had a restraining order against father which expired in June 2014. She told the social worker she had 75 percent custody of minor and exchanges her with father every other Thursday. Mother denied she was arrested and claimed the police officer grabbed her arm and handcuffed her when she was about to leave the mall with minor. She also denied she told the police officer she was homeless and said she provided him with her home address. Mother admitted that she tested positive for marijuana and methamphetamine when she was taken to the hospital

on September 15, 2014, but did not provide a date as to when she began her substance abuse, except to state that it was recent. She agreed that minor would remain in the care of father while the Department continued with its investigation and was willing to attend any program as recommended by the Department in order to regain custody of her daughter. The Department was unable to obtain mother's medical records because she "specifically signed a form to decline consent to advise [the Department] of her hold and/or medical condition." Mother had tested negative for illicit drugs during the Department's investigation period.

Father later told another social worker on the telephone that mother has an extensive history with drugs and that he terminated his relationship with her prior to minor's birth because of her drug use. He believed that mother has abstained from substance abuse but never for too long of a period. Father has talked about mother's substance abuse with social workers, the dependency court, and family law court in the past. Father further stated that mother's boyfriend is also a heavy drug user.

At the September 24, 2014 detention hearing, the court found a prima facie case for detaining minor and a showing that minor is a person described under section 300, subdivision (b) was established. The court ordered minor released to father and the Department to provide family maintenance services. Mother was ordered to submit to weekly drug testing and a mental health assessment. The court also ordered monitored visits for mother three times per week for three hours to be monitored by a Department approved monitor.

The Department filed a combined jurisdiction and disposition report for the adjudication hearing. Although minor remained released to father, he made arrangements for minor to reside at parental grandmother's house during the time he traveled for work. Minor told the dependency investigator that sometimes mother "thinks someone is tracking her and people know where she is and it's kind of confusing. I don't know who it is and I'm scared." Minor said when mother visited her at the Department's office on October 2, 2014, mother told her that a man was following her. Minor stated she has never seen mother smoke cigarettes or use any drugs. However, she said mother's

7

boyfriend "smokes a vaporizer. It blows out smoke. It's like a little tube with a mouth thing with different flavor sauces that you can taste. One of them smells like a glazed donut. They smell good." Minor stated she wants "half time with my mommy and half time with my daddy. So it is fair."

Father told the investigator mother had long-standing mental health and emotional problems. "In 2010, she hit me once during a visitation exchange. It was unprovoked and she was holding [minor] when it happened. Recently, I was taking [minor] to the police station for a visitation exchange. I was carrying [minor] and [mother] came from behind and tried to rip [her] out of my arms. Then she purposely fell on the ground and started screaming that I had hit her . . . [The police] looked at the video tape [*sic*] and told [mother] that the allegations she made were not true and . . . that they were not going to press charges." Father also told the investigator that mother had been abusing drugs since before minor was born and it is the reason he broke up with her. He stated that "she used a lot of pot. She also used ecstasy." Father said he is "perfectly capable of caring for [minor]."

Paternal grandmother told the investigator that one time father called her and told her to come to minor's school because mother would not let them get into his car. When paternal grandmother arrived, she saw every time father tried to cross the street to get to his car, mother drove forward in attempt to hit them. She decided, "That is when I knew something was mentally unstable with her." She corroborated that father broke up with mother because of mother's drug use. Moreover, mother has a history of accusing people of assaulting her. Earlier that year mother accused minor's principal of assaulting her. The principal ultimately told paternal grandmother that she made arrangements for her to pick up minor at the back of the school to avoid a scene with mother. Another time when paternal grandmother picked up minor from school, mother came from behind, grabbed minor, and screamed that paternal grandmother had assaulted her. The police responded, spoke with witnesses, and determined that mother falsified the allegations.

The Department recommended that mother submit to a Evidence Code 730 psychological evaluation to provide a more thorough assessment of mother's mental

capacity to care for minor than a standard mental health evaluation. The result of mother's mental health evaluation was still pending at the time of the adjudication hearing. The Department reasoned, "Given the family's prior history with [the] Department, the concerns outlined in this report, and the young age of the child it is felt that a psychological evaluation is warranted to assess mother's ability to care for the child."

At the November 7, 2014 adjudication hearing, mother and father appeared with counsel. The court found the allegations against mother in count b-1 and b-2 to be true by a preponderance of the evidence and minor was a dependent described under section 300. As to disposition, the court found by clear and convincing evidence under section 361, subdivision (c) that minor "would be in substantial risk of danger to her safety, protection, physical and emotional well being if returned to . . . mother and there's no reasonable means to keep [minor] safe without removal." The court ordered minor placed with father under the supervision of the Department. The court noted that father was a non-custodial parent.

The court terminated its jurisdiction with a family law exit order, placing sole legal and physical custody of minor with father. The court ordered monitored visits for mother with a monitor agreed upon by both parents or a professional monitor as paid for by mother. Attached to the court's custody order was a one-page addendum entitled "Reasons For No Or Supervised Visitation." The addendum indicated that the court was ordering monitored visitation because mother had not completed court-ordered programs, including "drug abuse treatment program with random testing," "psychiatric evaluation: following all recommendations," and "individual counseling: address all case issues, including mental health wellness, with a licensed therapist or registered intern." In referring to the addendum, the dependency court stated, "I think if mother did those things, she could go to a family law court and then ask for some kind of change. But until then, I think it's appropriate to give her monitored visits." Mother filed a timely notice of appeal on November 12, 2014.

9

## DISCUSSION

### A. Jurisdictional Findings

Mother contends there was insufficient evidence to support the court's exercise of jurisdiction over minor. We disagree.

We apply the substantial evidence standard of review when examining the sufficiency of the evidence supporting the court's jurisdictional findings. "[W]e draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) The pertinent inquiry is whether substantial evidence supports the finding, not whether a contrary finding might have been made. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

Section 300, subdivision (b), provides in pertinent part: "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse . . . The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness." To exercise jurisdiction under section 300, subdivision (b), the court must find: "'"(1) neglectful conduct by [the parent]; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." [Citation.]' [Citations.]" (*In re James R., Jr.* (2009) 176 Cal.App.4th 129, 135.)

The court sustained jurisdiction based on two allegations. If even one is sufficient, we may affirm. (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

10

### *Mother's Emotional and Mental Issues*

Mother contends there is insufficient evidence of any emotional or mental problems, and no evidence of a substantial risk of serious physical harm to minor. Specifically, mother contends that the September 15, 2014 arrest and subsequent psychiatric hold was an isolated incident that did not constitute sufficient grounds for finding jurisdiction. We disagree.

The jurisdictional finding of emotional and mental problems does not stem from merely one incident. Mother has a long history of mental and emotional problems, which is highlighted by mother's prior involvement with the Department that consisted of multiple referrals and a sustained section 300 petition. Mother's September 2014 arrest and subsequent psychiatric hold only demonstrates her continued erratic and paranoid behavior. Minor told the dependency investigator that mother "thinks someone is tracking her and people know where she is and it's kind of confusing. I don't know who it is and I'm scared." Father and paternal grandmother relayed multiple instances of mother's mental instability to the dependency investigator. Christina, who lived with mother, told the police that mother "often displayed irrational behavior and stated people were trying to kill her." Throughout the pendency of this case, mother steadfastly refused to acknowledge there were *any* problems and repeatedly stated that someone was following her. She also denied the Department access to her medical records by signing a form declining the their release. In the jurisdiction and disposition report, the Department was very concerned about mother's ability to care for minor, given the family's prior history with the Department, the concerns outlined in this report, and recommended a Evidence Code 730 evaluation to provide a more thorough assessment of mother's mental health. We conclude substantial evidence supports the court's finding minor was at serious risk of harm based on mother's emotional and mental issues.

***Mother's Substance Abuse***

Mother contends there was insufficient evidence for the court's jurisdictional finding of mother's substance abuse and current drug use because there was no nexus between mother's drug use and any risk of harm to minor.

We agree with mother that drug use alone without more is insufficient to support jurisdiction under section 300, subdivision (b). (*In re Drake M.* (2012) 211 Cal.App.4th 754, 769.) However, that is not the case here. Mother downplays her own admission to testing positive for methamphetamines and marijuana after her September 2014 arrest. Furthermore, father along with paternal grandmother also reported mother's had long history of drug abuse. The record also contradicts mother's contention that her drug use was harmless. There is substantial evidence supporting mother repeatedly neglecting minor's needs and safety. Father told the social worker minor had moved, transferred schools, and had been missing a lot of school without father's knowledge and in violation of a prior court order. He also stated mother only cares about her child support and cares less for the well-being of minor. Father stated that mother and minor were involved in a car accident, minor had bumped her head, but mother did not seek medical attention for minor. This resulted in father taking minor to urgent care and then reporting this incident to the Child Protective Services hotline. Minor told him that mother's boyfriend was physically abusing mother in front of her. Mother had not provided father with the address where she lived with their daughter. Although minor was unaware that mother used illicit drugs, she told the investigator that mother's live-in boyfriend "smokes a vaporizer," and father reported that mother's boyfriend was a heavy drug user. We hold that substantial evidence supports the court's finding minor was at risk of serious harm based on mother's substance abuse.

## B. Removal Order

Mother contends that because the court's jurisdictional findings were not supported by substantial evidence, we must also reverse its order removing minor from her custody.

Before removing a child from parental custody, a court must find clear and convincing evidence that if the child were returned home, there is or would be "substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor" and that there are no reasonable means to protect the child without removal.  (§ 361, subd. (c)(1).)  "The clear and convincing standard was adopted to guide the trial court; it is not a standard for appellate review.  [Citation.]  The substantial evidence rule applies no matter what the standard of proof at trial.  'Thus, on appeal from a judgment required to be based upon clear and convincing evidence, "the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong." [Citation.]' [Citation.]"  (*In re E.B.* (2010) 184 Cal.App.4th 568, 578.)

We held there is substantial evidence to support the court's jurisdictional findings based on mother's emotional and mental illness, and substance abuse.  The same evidence supports the court's removal order as well.

## C. Terminating Jurisdiction

Mother argues that the dependency court's exit order awarding father sole physical and legal custody of minor and requiring monitored visits for mother was an abuse of discretion.  Mother further argues that the order requiring her to complete drug treatment program before the family law court could modify the dependency court's exit order was improper.

In terminating jurisdiction, the court has the authority to make custody and

13

visitation orders.  (§ 362.4.)  "When the juvenile court terminates its jurisdiction over a dependent child, section 362.4 authorizes it to make custody and visitation orders that will be transferred to an existing family court file and remain in effect until modified or terminated by the superior court."  (*In re Roger S.* (1992) 4 Cal.App.4th 25, 30, fn. omitted.)  An order entered pursuant to section 362.4 is commonly referred to as an "exit order."  (*In re John W.* (1996) 41 Cal.App.4th 961, 970.)  The court is not restrained by "any preferences or presumptions" in fashioning exit orders pursuant to section 362.4, and therefore, a specific finding of detriment to the child is not required to deny or restrict visitation.  (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268; *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712.)  Rather, the court must be guided by the totality of the circumstances and issue an exit order that is in the child's best interests.  (*In re Chantal S.* (1996) 13 Cal.4th 196, 201; *In re Roger S., supra,* at pp. 30-31.)  In addition, although a child's input is to be considered when making visitation orders, it is not the sole factor in such a decision.  (*In re Julie M.* (1999) 69 Cal.App.4th 41, 51.)

We review the juvenile court's decision to terminate dependency jurisdiction and to issue an exit order pursuant to section 362.4 for an abuse of discretion.  (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.)  When a juvenile court has made a custody determination in a dependency proceeding, ""'a reviewing court will not disturb that decision unless the [lower] court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].'" [Citations.]"  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)  "'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.'"  (*Id.* at pp. 318-319.)  Additionally, where the sufficiency of the evidence to support a juvenile court's factual findings is challenged on appeal, we also must determine if there is substantial evidence, contradicted or uncontradicted, to support the court's order.  (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393; *In re Jasmine C.* (2003) 106 Cal.App.4th 177, 180.)  We review the entire record in a light most favorable to the findings, drawing all reasonable inferences in support of the lower court's determination and deferring to it on issues of credibility of the evidence and witnesses.  (*In re Albert T.*

(2006) 144 Cal.App.4th 207, 216; *In re Tania S.* (1992) 5 Cal.App.4th 728, 733-734.)  If there is substantial evidence to support the dependency court's ruling, we must uphold its order even if other evidence supports a contrary conclusion.  (*In re Megan S.* (2002) 104 Cal.App.4th 247, 251.)

### Father's Custody

The dependency court did not abuse its discretion in awarding physical and legal custody of minor to father when it terminated jurisdiction.  Minor lived with father throughout the dependency proceeding and was doing well in his care.  Mother did not seek treatment to address her mental and substance abuse issues, and continued to exhibit erratic behavior.  Given these circumstances, the court was within its discretion in determining that shared custody was not in the best interests of minor and awarding sole physical and legal custody to father.

### Mother's Monitored Visitation

The reporter's transcript reflects mother's counsel did object to monitored visitation, but only that "as far as the monitor is concerned, we are requesting that the father pay for the monitor.  My client doesn't have the financial ability to have a professional monitor [for] her visits."  By failing to object to the monitored visitation, mother forfeited her right to raise the issue on appeal.  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 [to preserve an issue for appeal, a party ordinarily must raise the objection in the trial court].)  Even if mother had objected, the court did not abuse its discretion in ordering monitored visits for mother.  Mother clearly lacked any understanding of her own mental and emotional problems, and was unable to properly take care of minor.  Mother's behavior was so troubling that the police had her put on a psychiatric hold.  Moreover, at the time of disposition the Department was concerned about mother's mental health that it recommended a 730 evaluation, which would more thoroughly

15

assess mother's ability to care for minor rather than a generic mental health assessment. Therefore, the monitored visitation order was not an abuse of discretion.

### *Mother's Drug Treatment*

Dependency courts may require participation in counseling and other programs in an exit order. (*In re Cole Y.* (2015) 233 Cal.App.4th 1444, 1455-1456.) Our Supreme Court held in *In re Chantal S., supra,* 13 Cal.4th 196 that the dependency court may make collateral orders that are reasonably related to the custody and visitation orders. (*Id.* at pp. 203-204.) Section 362, subdivision (d) states in pertinent part: "The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the minor is a person described by Section 300." "In devising these orders, 'The [dependency] court has broad discretion to decide what means will best serve the child's interest.' (*In re Corey A.* (1991) 227 Cal.App.3d 339, 346.) 'Its determination will not be reversed absent a clear abuse of that discretion.' (*Ibid.*)" (*In re Cole Y., supra,* at p. 1456.)

The reporter's transcript reflects mother's counsel did not inquire about the basis for the drug treatment program requirement or object to it, forfeiting her right to raise the issue on appeal. (*In re S.B., supra,* 32 Cal.4th at p. 1293.) Even if mother had objected, the court did not abuse its discretion in requiring a drug treatment program for mother. By her own admission, mother tested positive for methamphetamine and marijuana in September 2015. Even though mother tested negative in her weekly drug testing, she has refused to seek treatment for her admitted drug use. It is not patently absurd for the court to require a drug treatment program to eliminate mother's drug use.

16

## DISPOSITION

The dependency court's jurisdictional findings and dispositional orders are affirmed.

KRIEGLER, J.

We concur:

MOSK, Acting P. J.

BAKER, J.

17